**MARGARET E. SCHROEDER**, OSB No. 025748
Email:  margie@millerinsurancelaw.com
MILLER INSURANCE LAW LLC
521 SW Clay Street, Portland, OR 97201
Telephone: (971) 255-1443
*Attorneys for Defendants*
*Cedar Avenue LLC and William Ford, Jr.*

The Hon. Jolie A. Russo

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Company,<br><br>                    Plaintiff,<br><br>vs.<br><br>CEDAR AVENUE, LLC, an Oregon Limited Liability Company, and WILLIAM FORD, JR., individually,<br><br>                    Defendants. | Case No. 3:23-cv-00634-JR<br><br>**DEFENDANTS' AND COUNTER CLAIMANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |
| CEDAR AVENUE, LLC, an Oregon Limited Liability Company, and WILLIAM FORD, JR., individually,<br><br>                    Counter Claimants,<br><br>          v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Company,<br><br>                    Counter Defendant. | |

## <u>TABLE OF CONTENTS</u>

LR 7-1 CERTIFICATION ................................................................................ 1

MOTION FOR SUMMARY JUDGMENT ........................................................ 1

LEGAL MEMORANDUM ............................................................................... 2

I.      INTRODUCTION ................................................................................. 2

II.     LEGAL STANDARDS .......................................................................... 2

        A.      Legal Standards for Motion for Summary Judgment ................. 2

        B.      Applicable Law .......................................................................... 3

        C.      Legal Standards Governing State Farm's Duty to Defend ............ 3

        D.      Legal Standards Governing the Interpretation of Insurance Policies ............... 6

III.    STATEMENT OF FACTS ..................................................................... 8

        A.      Procedural Background .............................................................. 8

        B.      The Complaint in the Liability Lawsuit ...................................... 8

        C.      No Criminal Action Against Mr. Ford ....................................... 10

        D.      Relevant Insurance Policy Provisions ..................................... 10

                1.      The Rental Policy's Insuring Agreement ........................ 10

                2.      The Rental Policy's Exclusions ...................................... 11

                3.      Defined Terms in the Rental Policy .............................. 11

                4.      Additional Coverages Provision in the Rental Policy .......... 12

IV.     DISCUSSION .................................................................................... 12

        A.      The Liability Lawsuit Alleges "Personal Injury" ....................... 12

        B.      The Liability Lawsuit Alleges an "Occurrence" ....................... 14

        C.      None of the Exclusions in the Rental Policy Preclude Coverage ........... 16

       1.    "Intended Injury" Exclusion Does Not Apply ........................................... 17

       2.    "Willful and Malicious Acts" Exclusion Does Not Apply ......................... 18

       3.    "Penal Acts" Exclusion Does Not Apply ................................................. 19

   D.    Defendants' Counterclaim for Attorney Fees................................................. 20

V.   CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. General Star Indem. Co.*,
    335 Or. 392, 67 P.3d 931 (2003) .............................................................. 5, 14, 18, 19

*Acosta v. City Nat'l Corp.*,
    922 F.3d 880 (9th Cir. 2019) ........................................................................................ 2

*Allianz Global Risks US Ins. Co. v. ACE Prop. & Cas. Ins. Co.*,
    367 Or. 711, 483 P.3d 1124, *opinion adhered to as modified on reconsideration*,
    368 Or. 229, 489 P.3d 115 (2021) ............................................................................ 3, 4

*Allstate Ins. Co. v. Morgan*,
    123 F.Supp.3d 1255 (D. Or. 2015) .......................................................................... 8, 16

*Am. Econ. Ins. Co. v. Hughes*,
    121 Or. App. 183, 854 P.2d 500 (1993) ...................................................................... 8

*American Hardware Ins. Group v. West One Auto. Group, Inc.*,
    167 Or. App. 244, 2 P.3d 413 (2000) ....................................................................... 13

*Beck v. Metropolitan Prop. and Cas. Ins. Co.*,
    No. 3:13-cv-00879-AC, 2015 WL 4112343 (D. Or. July 6, 2015) ................................ 3

*Bighorn Logging Corp. v. Truck Ins. Exch.*,
    295 Or. App. 819, 437 P.3d 287, *rev. den.*, 365 Or. 195, 451 P.3d 975 (2019) ... 17, 23

*Botts v. Hartford Acc. & Indem. Co.*,
    284 Or. 95, 585 P.2d 657 (1978) .............................................................................. 15

*Chale v. Allstate Life Ins. Co.*,
    353 F.3d 742 (9th Cir. 2003) .................................................................................... 15

*Estate of Schuch by and through Arle v. State Farm Fire and Cas. Co.*,
    552 F.Supp.3d 1154 (D. Or. 2021) ...................................................................... 18, 19

*Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*,
    249 F.3d 1132 (9th Cir. 2001) ..................................................................................... 2

*Ferguson v. Birmingham Fire Ins. Co.*,
    254 Or. 496, 460 P.2d 342 (1969) ........................................................... 5, 14, 18, 19

*Gakk Inc. v. Acceptance Cas. Ins. Co.*,
    No. CV 09-6282-MO, 2010 WL 3259905 (D. Or. Aug. 16, 2010) ............................ 5, 6

*Gasperini v. Center for Humanities, Inc.*,
    518 U.S. 415 (1996) ................................................................................................... 3

*Getlin v. Maryland Cas. Co.*,
    196 F.2d 249 (9th Cir. 1952) ...................................................................................... 3

*Great W. Cas. Co. v. See*,
   185 F.Supp.2d 1164 (D. Nev. 2002) ....................................................... 21

*Groshong v. Mut. of Enumclaw Ins. Co.*,
   329 Or. 303, 985 P.2d 1284 (1999) ................................................... 6, 13

*Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*,
   313 Or. 464, 836 P.2d 703 (1992) ......................................... 6, 7, 18, 23

*Holloway v. Republic Indem. Co. of Am.*,
   201 Or. App. 376, 119 P.3d 239 (2005), *rev'd on other grounds*,
   341 Or. 642, 147 P.3d 329 (2006) ..................................................... 5, 14

*Houston Specialty Ins. Co. v. Rodriguez Corp.*,
   No. 3:18-cv-01886-YY, 2019 WL 7630791 (D. Or. Oct. 25, 2019) ............................ 17

*Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*,
   285 Or. App. 416, 395 P.3d 892 (2017) ...................................................... 6

*Interstate Fire & Cas. Co. v. Archdiocese of Portland in Oregon*,
   35 F.3d 1325 (9th Cir. 1994) ............................................................... 16

*Johnson v. Center Mut. Ins.*,
   529 N.W.2d 568 (N.D. 1995) ............................................................... 23

*Land v. West Coast Life Ins. Co.*,
   201 Or. 397, 270 P.2d 154 (1954) ........................................................... 7

*Maki v. Nikula*,
   224 Or. 180, 355 P.2d 770 (1960) .......................................................... 13

*Marleau v. Truck Ins. Exch.*,
   333 Or. 82, 37 P.3d 148 (2001) ......................................................... 4, 14

*Minnis v. Oregon Mutual Ins. Co.*,
   162 Or. App. 198, 986 P.3d 77 (1999), *rev'd in part on other grounds*,
   334 Or. 191, 48 P.3d 137 (2002) ........................................................... 17

*Mutual of Enumclaw Ins. Co. v. Gutman*,
   172 Or. App. 528, 21 P.3d 101 (2001) ................................................. 16, 19

*Mutual of Enumclaw Ins. Co. v. Rohde*,
   170 Or. App. 574, 13 P.3d 1006 (2000) .............................................. 6, 18, 20

*N. Clackamas School Dist. No. 12 v. Oregon School Bds. Assoc. Prop. & Cas. Trust*,
   164 Or. App. 339, 991 P.2d 1089 (1999) .................................................... 15

*North Pac. Ins. Co. v. Hamilton*,
   332 Or. 20, 22 P.3d 739 (2001) ............................................................. 7

*North Pacific Ins. Co. v. Am. Mfrs. Mut. Ins. Co.*,
   200 Or. App. 473, 115 P.3d 970 (2005) ..................................................... 6

*Occidental Fire & Cas. Co. v. Cook*,
    92 Idaho 7, 435 P.2d 364 (1967) ............................................................ 21

*Paxton-Mitchell Co. v. Royal Indem. Co.*,
    279 Or. 607, 569 P.2d 581 (1977) .................................................. 4, 17, 19

*Perrigo v. Boehm*,
    194 Or. 507, 242 P.2d 791 (1952) ............................................................ 13

*Ram Express, LLC v. Progressive Commercial Casualty Company*,
    303 Or. App. 211, 463 P.3d 532 (2020) ................................................ 7, 16

*Security Mut. Cas. Co. v. Luthi*,
    303 Minn. 161, 226 N.W.2d 878 (1975) .................................................. 22

*Snook v. St. Paul Fire & Marine Ins. Co.*,
    220 F. Supp. 314 (D. Or. 1963) ................................................................ 3

*St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*,
    324 Or. 184, 923 P.2d 1200 (1996) ........................................................ 15

*Stanford v. Am. Guar. Life Ins. Co.*,
    280 Or. 525, 571 P.2d 909 (1977) .............................................................. 8

*State Farm Fire & Cas. Co. v. Sigman*,
    508 N.W.2d 323 (1998) ...................................................................... 22, 23

*Stewart v. Morosa Bros. Transp. Co.*,
    611 F.2d 778 (9th Cir. 1980) ..................................................................... 3

*STK Enterprises, Inc. v. Crusader Ins. Co.*,
    171 Or. App. 9, 14 P.3d 638 (2000) ........................................................ 13

*TIG Ins. Co. v. Travelers Ins. Co.*,
    No. CV-00-1780-ST, 2003 WL 24051560 (D. Or. Mar. 24, 2003) .............. 15

*Upland Mut. Ins., Inc. v. Noel*,
    214 Kan. 145, 519 P.2d 737 (1974) ........................................................ 21

*Western Equities, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    184 Or. App. 368, 56 P.3d 431 (2002) ............................................ 4, 18, 19

*Williams Consol. I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*,
    230 S.W.3d 895 (Tex. App. 2007) ............................................................. 7

*ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.*,
    222 Or. App. 453, 194 P.3d 167 (2008) .................................................. 17

**Other Authorities**

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged ed. 2002) .............. 20, 21

**Rules**

Fed. R. Civ. P. 56 ..................................................................................... 1, 2

## **LR 7-1 CERTIFICATION**

In compliance with this Rule, the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so.

## **MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendants and Counter Claimants Cedar Avenue LLC and William Ford, Jr. (collectively "Defendants") move this Court for an Order: (1) finding that under Plaintiff State Farm Fire and Casualty Company's ("State Farm") Rental Dwelling Policy No. 97-CG-V506-7 ("Rental Policy"), State Farm has a duty to continue to defend Defendants against the Complaint in the underlying lawsuit filed in Oregon District Court Case No. 3:22-cv-01883-AN (the "Liability Lawsuit"), and (2) granting summary judgment in Defendants' favor on State Farm's First Claim for Relief[1] on the duty to defend and on Defendants' Counterclaim for their reasonable attorneys' fees incurred herein pursuant to the terms of the Rental Policy issued by State Farm to Defendants, in an amount to be determined after this case is fully resolved.

This motion is supported by the legal memorandum below, the facts cited herein, and the record on file with the Court.

/ / /

/ / /

---

[1]  In paragraph 37 of State Farm's Complaint in this lawsuit, State Farm agreed to "refrain in this declaratory judgment action from litigating, regarding the duty to indemnify, factual issues until the Underlying [Liability] Lawsuit is resolved."  Defendants agreed in their Answer that State Farm's claim for declaratory relief on the duty to indemnify should be stayed until the Liability Lawsuit has been resolved.  Accordingly, this motion only pertains to State Farm's duty to continue to defend Defendants in the Liability Lawsuit.

## LEGAL MEMORANDUM

## I.  INTRODUCTION

This case is about whether State Farm has a duty to continue to defend Defendants against the Complaint in the Liability Lawsuit.  State Farm's duty to defend was triggered because the Complaint, without amendment, creates the potential for covered liability at trial.  Specifically, the Complaint allows for the possibility that Defendants are found liable in negligence for wrongful eviction.  In a nutshell, the Complaint in this case provides a possible basis for recovery that falls within the Rental Policy and outside the exclusions cited by State Farm; therefore, State Farm has a duty to continue defending Defendants in the Liability Lawsuit.

## II.  LEGAL STANDARDS

### A.  Legal Standards for Motion for Summary Judgment

A court should grant a motion for summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

Where, as here, the parties have each filed motions for summary judgment, "[e]ach motion must be considered on its own merits." Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001).  "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." Id. at 1134; Acosta v. City Nat'l Corp., 922 F.3d 880, 885 (9th Cir. 2019).

---

[2]  This brief contains hyperlinks to Westlaw for all rules and cases cited herein.

B.    <u>Applicable Law</u>

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Federal courts sitting in diversity must apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

An insurance policy is a contract. *Stewart v. Morosa Bros. Transp. Co.*, 611 F.2d 778, 781 (9th Cir. 1980). "The Ninth Circuit, as well as courts in this district, have long held that contract interpretation is a matter of substantive law to which state law applies." *Beck v. Metropolitan Prop. and Cas. Ins. Co.*, No. 3:13-cv-00879-AC, 2015 WL 4112343, at *3 (D. Or. July 6, 2015) (citing *Getlin v. Maryland Cas. Co.*, 196 F.2d 249, 250 (9th Cir. 1952)); *Snook v. St. Paul Fire & Marine Ins. Co.*, 220 F. Supp. 314, 316-17 (D. Or. 1963) ("This being a diversity case, jurisdiction is grounded on that fact and the [insurance] policy must be interpreted and construed in accordance with the Laws of Oregon, the place where the contract was made.")).

The primary issue in this case is the interpretation of Oregon insurance policies, and Oregon law applies.

C.    <u>Legal Standards Governing State Farm's Duty to Defend</u>

An insurer's duty to defend is governed by the following principles recently summarized by the Oregon Supreme Court in *Allianz Global Risks US Ins. Co. v. ACE Prop. & Cas. Ins. Co.*, 367 Or. 711, 483 P.3d 1124, *opinion adhered to as modified on reconsideration*, 368 Or. 229, 489 P.3d 115 (2021):

> Because ORS 742.016(1) and our cases treat the interpretation of insurance policies as legal questions, decided based on the "terms and conditions of the policy," our approach is sometimes referred to as a "four-corner" rule, excluding the consideration of evidence outside the "four corners" of the policy itself. *See West Hills Development Co. v. Chartis Claims*, 360 Or 650, 653, 385 P3d 1053 (2016). Similarly, our determination

of whether an insurer has a duty to defend a particular claim depends on the allegations in the complaint. **If "the allegations in the complaint assert a claim covered by the policy, then the insurer has a duty to defend."** *Id.* By "limiting the analysis to the complaint and the insurance policy," we generally do not consider extrinsic evidence, an approach sometimes called the "eight-corners" rule. *Id.*

* * * * *

The question whether the insurer is required to defend against particular claims depends on the policy and the allegations in the complaint asserting the claims – the "four-corners" and "eight-corners" rules discussed above.

Allianz, 367 Or. at 734 and 736 (emphasis added).

An insurer owes a duty to defend if the claimant can recover under the allegations of the complaint, without amendment, upon any basis for which the insurer affords coverage. *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91, 37 P.3d 148 (2001).

A complaint need not plead a claim in perfect form to provide notice to the insurer. *Id.* Even if the allegations are unclear but may be reasonably interpreted to include an incident within the coverage of the policy, that alone is sufficient to trigger the duty to defend. *Id.*

Any ambiguity in the complaint is resolved in favor of defense coverage for the insured. *Western Equities, Inc. v. St. Paul Fire & Marine Ins. Co.*, 184 Or. App. 368, 371, 56 P.3d 431 (2002). Where the complaint contains some allegations of conduct or damage excluded from the policy but also contains others that can reasonably be interpreted to fall within coverage, the insurer must defend. *Paxton-Mitchell Co. v. Royal Indem. Co.*, 279 Or. 607, 611, 569 P.2d 581 (1977).

Where a covered claim is merely implied within the express allegations of an uncovered claim, Oregon courts apply the "lesser included offense" rule, analogizing from criminal law, to find a duty to defend:

**[T]he duty to defend will also arise under some circumstances when the complaint contains only one count which, on its face, falls within a policy exclusion.** If the complaint, without amendment, may impose liability for conduct covered by the policy, the insurer is put on notice of the possibility of liability and it has a duty to defend. For example, in an action of trespass brought against the insured, if the complaint alleges a willful entry (in order to support a claim for punitive damages), the plaintiff could, without amending the complaint, recover ordinary damages for a non-willful entry. The insurer, therefore, would have the duty to defend. **The innocent trespass may be treated as a "lesser included" offense by analogy to the criminal law.**

*Ferguson v. Birmingham Fire Ins. Co.*, 254 Or. 496, 506-07, 460 P.2d 342 (1969) (emphasis added); *see also Abrams v. General Star Indem. Co.*, 335 Or. 392, 399-400, 67 P.3d 931 (2003) (confirming that the doctrine adopted in 1969 remains fully intact today). The axiomatic principle driving the "lesser included offense" rule is that covered liability could result from the complaint without amendment. *Id.* The analysis focuses on the allegations in the complaint rather than the label on the claim. *Holloway v. Republic Indem. Co. of Am.*, 201 Or. App. 376, 385, 119 P.3d 239 (2005), *rev'd on other grounds*, 341 Or. 642, 147 P.3d 329 (2006).

This Court's opinion in *Gakk Inc. v. Acceptance Cas. Ins. Co.*, No. CV 09-6282-MO, 2010 WL 3259905, at *3 (D. Or. Aug. 16, 2010), perfectly illustrates the breadth of Oregon's duty to defend standards. In *Gakk*, this Court considered whether an assault and battery exclusion precluded defense coverage based on the allegation that the insured "caused a knife to make contact with [the underlying] plaintiff." *Id.* at *3. This Court held the duty to defend was triggered because the complaint did not expressly allege the insured's subjective intent to cause harm. *Id.* As this Court explained in *Gakk*:

It takes a form of willful blindness, mandated by the legal principles described above, to assert that when Mr. Thornton stabbed Mr. Zeppa in the face with a knife, he might not have intended any harmful or offensive contact. We can all suspect the day may come when the facts show the

required intent for the exclusion to apply.  But at this stage, when only the complaint and the policy are in play, I am obligated to find a duty to defend.

*Id*. at *4.  The court further explained that "the complaint in this case provides a possible basis for recovery that falls within the insurance policy and outside the assault and battery exclusion."  *Id*. at *3.

    **D.**   **Legal Standards Governing the Interpretation of Insurance Policies**

    **"**The interpretation of an insurance policy is an issue of law" for the court.  *Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 285 Or. App. 416, 422, 395 P.3d 892 (2017) (citing *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 469, 836 P.2d 703 (1992)).

    Insurance policies are construed from "the perspective of the 'ordinary purchaser of insurance.'"  *North Pacific Ins. Co. v. Am. Mfrs. Mut. Ins. Co.*, 200 Or. App. 473, 478, 115 P.3d 970 (2005).  Undefined policy terms are generally given their ordinary and common meaning.  *Mutual of Enumclaw Ins. Co. v. Rohde*, 170 Or. App. 574, 579, 13 P.3d 1006 (2000).  Where policy terms are unambiguous, they are enforced as written.  *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 308, 985 P.2d 1284 (1999).

    However, where policy terms are susceptible to more than one interpretation, Oregon courts resort to a series of analytical steps to resolve the interpretative dispute.  *Hoffman*, 313 Or. at 469-71.  Courts first determine whether the competing interpretations are plausible when viewed in isolation.  *Id*.  If they are, courts next view the competing interpretations in light of the immediate context of the policy language and in the broad context of the policy as a whole.  *Id*.

    If only one interpretation continues to be reasonable after contextual review, that interpretation controls.  *Id*.  If, however, both interpretations continue to be reasonable,

the policy language is deemed legally ambiguous and is construed in favor of coverage for the insured. *Id.* In other words, the insurer prevails by demonstrating that its interpretation is the only reasonable one and the policy cannot be read any other way. Conversely, if the insured offers a single reasonable interpretation, that interpretation controls, irrespective of any other reasonable interpretation offered by the insurer.

Within this framework, other interpretative principles are at play, as well. Under Oregon law, the Court must give the policy "a liberal construction as favorable to the insured as in good conscience will be permitted, and every reasonable intendment will be allowed in support of a view that will protect the insured and defeat a forfeiture." *Land v. West Coast Life Ins. Co.*, 201 Or. 397, 401, 270 P.2d 154 (1954).

Because insurers have unfettered power to draft policy language as they see fit, courts burden them with the consequences of poor drafting. *E.g., North Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 26, 29, 22 P.3d 739 (2001) (holding that "[i]t is the insurers' burden to draft exclusions and limitations that are clear," and "the court does not permit the party who drafted the term or phrase to benefit from the obscurity"); *see also Williams Consol. I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895, 902 (Tex. App. 2007) ("In determining the intention of the parties, we look only within the four corners of the insurance agreement to see what is actually stated, not what was allegedly meant.").

Moreover, the insured has the initial burden to prove that the coverage grant is satisfied, whereas the insurer has the burden to prove the applicability of exclusionary language. *E.g., Ram Express, LLC v. Progressive Commercial Casualty Company*, 303 Or. App. 211, 216, 463 P.3d 532 (2020) ("In an insurance coverage dispute, the insured

has the burden to prove coverage, and the insurer has the burden to prove an exclusion from coverage.").

"The court must construe exclusion clauses narrowly." *Allstate Ins. Co. v. Morgan*, 123 F.Supp.3d 1255, 1273 (D. Or. 2015) (citing *Am. Econ. Ins. Co. v. Hughes*, 121 Or. App. 183, 186, 854 P.2d 500 (1993)). "[A]ny ambiguity in an exclusion[ ] clause is strictly construed against the insurer." *Id*. (citing *Stanford v. Am. Guar. Life Ins. Co.*, 280 Or. 525, 527, 571 P.2d 909 (1977)).

## III.    STATEMENT OF FACTS

### A.    Procedural Background

On December 5, 2022, plaintiffs Haylee Rose Davidson and Eric Davidson filed the Liability Lawsuit against Defendants for alleged housing discrimination, violations of the Oregon Residential Landlord and Tenant Act, battery, intentional infliction of emotional distress, negligence, and intentional interference with economic relations. (ECF 1-3.)

By letter dated January 27, 2023, State Farm agreed to provide defense coverage to Defendants for the Liability Lawsuit, subject to a reservation of rights. (Declaration of Margaret E. Schroeder ("Schroeder Decl."), ¶ 2, Ex. 1.)

### B.    The Complaint in the Liability Lawsuit

The Davidsons' Complaint in the Liability Lawsuit states several claims against Defendants, one of which is for negligence, based in part on "threats regarding their housing." (ECF 1-3, p. 13, ¶ 74.) The following allegations related to the Davidsons' housing which were incorporated into the Davidsons' claim for negligence in the Complaint filed in the Liability Lawsuit:

- "Plaintiffs [Davidsons] rented and lived together in a unit ("Rental Home") at Defendants' duplex ("Duplex")."  (ECF 1-3, p. 2 (Introduction).)

- "Defendant Cedar Avenue LLC … owns and at all relevant times owned the Duplex in Milwaukie, Oregon."  (ECF 1-3, p. 3, ¶ 9.)

- "On approximately December 5, 2021, Mr. Ford rented the Rental Home located at 14015 SE Cedar Avenue, Milwaukie, Oregon to Plaintiffs [Davidsons] for a monthly rent of $1,250, pursuant to a written rental agreement (the "Lease")."  (ECF 1-3, p. 4, ¶ 13.)

- "On or before December 10, 2020, Mr. Ford requested that Ms. Davidson pick up a pie for him at the grocery store.  Ms. Guiterres [sic] was unable to get the type of pie requested because the store did not have that type of pie.  When Ms. Davidson informed Mr. Ford about the pie he accused her of lying and told her to get out of the Rental House."  (ECF 1-3, p. 4, ¶ 15.)

- "On December 10, 2021, Mr. Ford also sent a text message to Mr. Davidson stating picking up a pie 'is part of why ya'll's rent is so low' and '[y]our rent will go up to $1,300.'"  (ECF 1-3, p. 4, ¶ 16.)

- "In March 2022, Ms. Davidson reported to work as a caregiver of Annie Heberts, who lived next-door to her in the other unit of the Duplex.  Upon entering she found Mr. Ford sleeping naked on an air mattress in the living room.  Ms. Davidson went to Ms. Heberts' bedroom to assist her.  Ms. Davidson also requested that Ms. Heberts ask Mr. Ford put on his clothes."  (ECF 1-3, p. 4, ¶ 18.)

- "Mr. Ford ignored the request and, instead, put his clothes in the oven.  Ms. Davidson told Mr. Ford that putting clothes in the oven was unsafe.  In response he told her to mind her own business and make his coffee."  (ECF 1-3, p. 5, ¶ 19.)

- "On June 29, 2022, Ms. Davidson reported to work at Ms. Heberts' unit, where Mr. Ford was present and naked once again.  Ms. Davidson again requested that Ms. Heberts ask Mr. Ford to put on clothes.  In response, Mr. Ford became visibly agitated and did not put on clothes.  Ms. Davidson told Mr. Ford that she refused to work if he did not put on clothes.  In response, Mr. Ford said that Ms. Davidson would be breaching a contract if she didn't work.  Mr. Ford also said that he would evict Ms. Davidson right after she came to her senses and made his "goddamn coffee."  (ECF 1-3, p. 6, ¶ 28.)

- "Also immediately following the June 29 conversation, Mr. Ford sent a text message to Mr. Davidson stating, "Rent increase notice This is your 90 day notice for a rent increase."  (ECF 1-3, p. 6, ¶ 30.)

- "On August 4, 2022, the Davidsons vacated the Rental Home to escape Mr. Ford and spent some nights on a relative's couch before finding housing in Ms. Davidson's parents' basement."  (ECF 1-3, p. 7, ¶ 35.)

### C.   No Criminal Action Against Mr. Ford

Mr. Ford has not been indicted, charged, or convicted of any crime, nor has he pleaded guilty to any crime, with respect to the Davidsons in the Liability Lawsuit or relating to or arising out of the Davidsons' allegations against Mr. Ford in the Liability Lawsuit.  Pursuant to State Farm's request, Mr. Ford signed a declaration confirming this.  (*Schroeder Decl.*, ¶ 4, Ex. 3.)

### D.   Relevant Insurance Policy Provisions

#### 1.   The Rental Policy's Insuring Agreement

The Rental Policy includes the following insuring agreement for business liability:

---

**COVERAGE  L – BUSINESS  LIABILITY (INCLUDING  PROVISIONS POTENTIALLY RESTRICTING OR ABRIDGING THE RIGHTS OF THE INSURED**)

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury**, **personal injury**, or **property damage** to which this coverage applies, caused by an **occurrence**, and which arises from the ownership, maintenance, or use of the **insured premises**, we will:

1.     pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.     provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

---

(ECF 1-1, p. 15.)

/ / /

/ / /

## 2. The Rental Policy's Exclusions

State Farm relies on the following exclusions in the Rental Policy to dispute its

duty to defend Defendants in the Liability Lawsuit:

---

**SECTION II – EXCLUSIONS**

1.  **Coverage L - Business Liability** and **Coverage M - Premises Medical Payments** do not apply to:

    a.  **bodily injury**, **personal injury**, or **property damage**:

        (1)  which is either expected or intended by an **insured**; or

        (2)  to any person or property which is the result of willful and malicious acts of an **insured**;

                                    * * * * *

2.  **Coverage L - Business Liability** does not apply to:

                                    * * * * *

    f.  **personal injury** caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any **insured;**

---

(ECF 1-1, pp. 15 and 17; *Coverage Complaint*, ¶ 21.c.)

## 3. Defined Terms in the Rental Policy

The Rental Policy defines bolded words, including the following:

---

1.  "**bodily injury**" means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom.

                                    * * * * *

8.  "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

    a.  **bodily injury**;

    b.  **property damage**; or

---

c. **personal injury**;

during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

9. "**personal injury**" means injury arising out of one or more of the following offenses:

a.  false arrest, detention or imprisonment or malicious prosecution;

b.  libel, slander or defamation of character; or

c.  invasion of privacy, wrongful eviction or wrongful entry.

(ECF 1-1, pp. 6-7.)

### 4.  Additional Coverages Provision in the Rental Policy

The Rental Policy contains the following additional coverages:

**SECTION II – ADDITIONAL COVERAGES**
**(INCLUDING PROVISIONS POTENTIALLY RESTRICTING OR ABRIDGING THE RIGHTS OF THE INSURED)**

We cover the following in addition to the limits of liability:

1. **Claim Expenses.**  We pay:

* * * * *

c.  reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

(ECF 1-1, p. 18.)

## IV.    DISCUSSION

### A.    The Liability Lawsuit Alleges "Personal Injury"

The allegations quoted above in the Complaint in the Liability Lawsuit satisfy the

Rental Policy's insuring agreement.   The insuring agreement requires five things: (1) a

claim or suit, (2) against any **insured**, (3) for damages because of, (4) **bodily injury**, **personal injury**, or **property damage** to which this coverage applies, (5) caused by an **occurrence**.  (ECF 1-1, p. 15.)

The Complaint is unquestionably: (1) a suit, (2) against Cedar Avenue LLC, the named insured in the Rental Policy (ECF 1-1, p. 7 (definition of "**named insured**")), and William Ford, Jr., as the sole member-manager of Cedar Avenue LLC and while acting as real estate manager for Cedar Avenue LLC (ECF 1-1, p. 4 (definition of "**insured**")), (3) that states damages because of, (4) **personal injury**.

The definition of "**personal injury**" in the Rental Policy includes "injury arising out of … wrongful eviction."  (ECF 1-1, p. 7.)  The phrase "wrongful eviction" is not defined in the Rental Policy.  Oregon courts have interpreted this phrase in insurance policies as "an improper ouster from a possessory interest in property."  *STK Enterprises, Inc. v. Crusader Ins. Co.*, 171 Or. App. 9, 15, 14 P.3d 638 (2000) (citing *American Hardware Ins. Group v. West One Auto. Group, Inc.*, 167 Or. App. 244, 2 P.3d 413 (2000) and *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or. 303, 985 P.2d 1284 (1999)).

Neither physical ouster nor eviction by process of law is required to constitute eviction.  *Perrigo v. Boehm*, 194 Or. 507, 518, 242 P.2d 791 (1952).  "It is now well established that any disturbance of the tenant's possession by the landlord, or someone acting under his authority, … which deprives the tenant of the beneficial enjoyment of the premises, causing him to abandon them, amounts to a constructive eviction, provided the tenant abandons the premises within a reasonable time."  *Maki v. Nikula*, 224 Or. 180, 184, 355 P.2d 770 (1960).

Here, the Davidsons alleged in their Complaint that they "vacated the Rental Home to escape Mr. Ford and spent some nights on a relative's couch before finding housing in Ms. Davidson's parents' basement" and did so within a reasonable time.  (ECF 1-3, pp. 6-7, ¶¶ 30, 35.)

Even though the Davidsons did not allege a separate claim for wrongful eviction, "threats regarding their housing" is one of the bases for the Davidsons' negligence claim, and Oregon's "lesser included offense" doctrine necessarily preserves defense coverage under the allegations at issue.  *See Ferguson*, 254 Or. at 506-07 (establishing Oregon's "lesser included offense" doctrine in the duty to defend context); *Abrams*, 335 Or. at 399-400 (confirming same); *Holloway*, 201 Or. App. at 385 (the analysis focuses on the allegations in the complaint rather than the label on the claim); *Marleau*, 333 Or at 91 ("[An insurer] has a duty to defend if allegations in a complaint, identified as a single claim for relief, in fact state more than one claim for relief, at least one of which is for conduct covered by the policy.").  State Farm cannot rule out the possibility that Defendants could be found liable in simple negligence for the wrongful eviction of the Davidsons.

## B.    The Liability Lawsuit Alleges an "Occurrence"

The allegations in the Davidsons' Complaint in the Liability Lawsuit also satisfy the fifth and last requirement under the Rental Policy's insuring agreement: that the **personal injury** is caused by an **occurrence**.  (ECF 1-1, p. 15).

The Rental Policy defines **occurrence** as "an accident, including exposure to conditions, which results in * * * **personal injury** * * * during the policy period."  (ECF 1-1, p. 7.)  With respect to timing, the Rental Policy was effective from September 25, 2021 to September 25, 2022.  (ECF 1-1, p. 1.)  The Davidsons alleged they rented the Rental

Home on December 5, 2021, and vacated the Rental Home on August 4, 2022, all within the policy period of the Rental Policy.  (ECF 1-3, p. 4, ¶ 13; p. 7, ¶ 35.)

With respect to whether an "accident" has occurred, the word "accident" has been described as broad, malleable, and insusceptible to a single "universally accepted definition."  *See Chale v. Allstate Life Ins. Co.*, 353 F.3d 742, 746 (9th Cir. 2003) ("Notably, the Oregon Supreme Court has acknowledged the futility of such an undertaking," *i.e.*, trying to formulate such a "universally accepted definition"); *St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*, 324 Or. 184, 204, 923 P.2d 1200 (1996) (finding the dictionary definition "broad enough to cover the proposed definitions of both sides"); *Botts v. Hartford Acc. & Indem. Co.*, 284 Or. 95, 102, 585 P.2d 657 (1978) ("The problem arises from an erroneous impression that there is one all-encompassing definition of 'accident' or 'accidental' * * *.").

Against this inherent ambiguity, when Oregon courts have been asked to determine whether an accident or "occurrence" has transpired for purposes of insurance, they have repeatedly focused on whether the resulting harm was accidental.  *See*, *e.g.*, *Chale*, 353 F.3d at 746 ("It is well established that the proper focus of the inquiry is the injurious result, not the conduct leading to that result."); *TIG Ins. Co. v. Travelers Ins. Co.*, No. CV-00-1780-ST, 2003 WL 24051560 at *3 (D. Or. Mar. 24, 2003) ("An 'occurrence' for purposes of insurance coverage is any injury caused by an accident * * *."); *N. Clackamas School Dist. No. 12 v. Oregon School Bds. Assoc. Prop. & Cas. Trust*, 164 Or. App. 339, 345, 991 P.2d 1089 (1999) ("[W]e and the Supreme Court have recently reaffirmed that, in the insurance context, the meaning and determination of 'accident' focuses not on conduct, but on result.").  In other words, "[d]amages because of bodily

injury are caused by an occurrence, unless the insured subjectively intended to cause the *particular injuries* that produced the damages." *Mutual of Enumclaw Ins. Co. v. Gutman*, 172 Or. App. 528, 534, 21 P.3d 101 (2001) (emphasis in original).

The allegations that Defendants' actions negligently caused the Davidsons' **personal injury** satisfies the insuring agreement's **occurrence** requirement, especially for purposes of the duty to defend. At the very least, this allows for the possibility of Defendants' liability in negligence at trial. State Farm cannot rule that out under Oregon's controlling standards for determining the duty to defend.

Moreover, **occurrence** also includes "exposure to conditions," which can include exposure to harmful conduct. *See Interstate Fire & Cas. Co. v. Archdiocese of Portland in Oregon*, 35 F.3d 1325, 1329-30 (9th Cir. 1994) (finding that it was the boy's exposure to an abusive priest that constituted the occurrence in each policy period). The Complaint in the Liability Lawsuit also alleges that Defendants were exposed to various threats regarding their housing by Defendants. (ECF 1-3, ¶¶ 15, 16, 30, 35, 74.) That alleged exposure also satisfies the Rental Policy insuring agreement's **occurrence** requirement.

### C.    <u>None of the Exclusions in the Rental Policy Preclude Coverage</u>

State Farm relies on three policy exclusions in the Rental Policy, none of which apply to defeat defense coverage. State Farm bears the burden of proving the applicability of each exclusion, which must be strictly construed against it. *See Ram Express, LLC*, 303 Or. App. at 216 (holding insurer has the burden to prove an exclusion from coverage); *Morgan*, 123 F.Supp.3d at 1273 (holding exclusionary language is strictly construed against the insurer and in favor of coverage). Each exclusion is discussed in turn below.

### 1.  "Intended Injury" Exclusion Does Not Apply

The "intended injury" exclusion does not defeat defense coverage because the Complaint alleges liability in negligence, which expressly contemplates that Defendants acted negligently and without an intention to cause personal injury to the Davidsons.

The "intended injury" exclusion precludes coverage for bodily injury "which is either expected or intended by an insured."  (ECF 1-1, p. 15.)  "Oregon courts have equated this exclusion with the test" for "'occurrence'":

> The policy does not define the term "accident," but we have recognized that the term usually means actions that are "unforeseen, unexpected, unintended, or the like." * * * When the term is defined in that way, **the question whether a bodily injury was caused by an "accident" and the question whether it was caused intentionally present two sides of the same coin.  In each instance, the question is not whether the conduct that caused the injury was intentional but whether the insured specifically intended to cause the injury that gives rise to coverage.**

*Houston Specialty Ins. Co. v. Rodriguez Corp.*, No. 3:18-cv-01886-YY, 2019 WL 7630791 at *12-13 (D. Or. Oct. 25, 2019) (emphasis added) (citing *ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.*, 222 Or. App. 453, 468-69, 194 P.3d 167 (2008), and quoting *Minnis v. Oregon Mutual Ins. Co.*, 162 Or. App. 198, 210, 986 P.3d 77 (1999), *rev'd in part on other grounds*, 334 Or. 191, 48 P.3d 137 (2002) (internal citations omitted)); *see also Bighorn Logging Corp. v. Truck Ins. Exch.*, 295 Or. App. 819, 834-35, 437 P.3d 287, *rev. den.*, 365 Or. 195, 451 P.3d 975 (2019) (analyzing both the "occurrence" requirement and the "intentional injury exclusion" as part of the same discussion).

State Farm's reliance on this exclusion to avoid its duty to defend is erroneous and unconvincing.  Under Oregon's controlling standard for determining the duty to defend, all doubts must be resolved in favor of defense coverage.  *See Paxton-Mitchell Co.*, 279 Or. at 611 (holding that any ambiguity or lack of clarity in allegations must be resolved in

favor of defense coverage); *Western Equities, Inc.*, 184 Or. App. at 371 (same). The "intended injury" exclusion cannot defeat defense coverage.

### 2. "Willful and Malicious Acts" Exclusion Does Not Apply

The "willful and malicious acts" exclusion does not apply for the very same reason that the "intentional injury" exclusion does not apply. The Complaint expressly alleges liability in negligence that does not require a finding that Defendants acted willfully and maliciously. State Farm cannot rule out the possibility that Defendants could be found liable in simple negligence for the wrongful eviction of the Davidsons. *See Ferguson*, 254 Or. at 506-07 (establishing "lesser included offense" doctrine in duty to defend context); *Abrams*, 335 Or. at 399-400 (confirming same).

The "willful and malicious acts" exclusion precludes coverage for personal injury "which is the result of willful <u>and</u> malicious acts of an insured." (ECF 1-1, p. 15 (emphasis added).) In *Estate of Schuch by and through Arle v. State Farm Fire and Cas. Co.*, 552 F.Supp.3d 1154 (D. Or. 2021), the court noted that Oregon courts have not interpreted the willful and malicious acts exclusion, thus, *Hoffman* controls the Court's interpretation. *Schuch*, 552 F.Supp.3d at 1165 (citing *Hoffman*, 313 Or. at 469-71 (establishing Oregon's standards for policy interpretation)). Just like the State Farm policy at issue in *Schuch*, the Rental Policy does not define the words "willful" and "malicious," which means they are afforded their ordinary and common meaning. *See Rohde*, 170 Or. App. at 579-80 ("When a term is undefined by the policy itself, we identify the ordinary meaning of the term * * *.").

In *Schuch*, the court reviewed the parties' different cited dictionary definitions of the words "willful" and "malicious" and concluded that "willful and malicious" means "an act done both deliberately and with intent to harm another." *Schuch*, 552 F.Supp.3d at

1165.  The court then held that State Farm had a duty to defend the Underlying Lawsuit because "a reasonable trier of fact could find that [the defendant] merely acted negligently and did not intend any harm to come to [the plaintiff.]"  *Id.*

Similarly here, a negligence claim for wrongful eviction simply does not require a finding of willful and malicious acts, regardless of the breadth or constriction with which the words "willful" and "malicious" are construed.  Again, Oregon's "lesser included offense" doctrine necessarily recognizes defense coverage where a finding of mere negligence would still result in liability.  *See Ferguson*, 254 Or. at 506-07 (establishing doctrine in duty to defend context); *Abrams*, 335 Or. at 399-400 (confirming same).  State Farm cannot rule out the possibility that Defendants are found liable at trial for actions that were merely negligent but not willful and malicious.

All doubts must be resolved in favor of defense coverage.  *See Paxton-Mitchell Co.*, 279 Or. at 611 (holding that any ambiguity or lack of clarity in allegations must be resolved in favor of defense coverage); *Western Equities, Inc.*, 184 Or. App. at 371 (same).  The "willful and malicious acts" exclusion cannot defeat defense coverage.

### 3.    <u>"Penal Acts" Exclusion Does Not Apply</u>

Lastly, the "penal acts" exclusion does not apply for the same reasons that the "intentional injury" and "willful and malicious" exclusions do not apply.

First, Defendants could be liable for negligence for wrongful eviction, as pleaded in the Complaint in the Liability Lawsuit, without having committed any crime. *See e.g.,* *Gutman*, 172 Or. App. at 535 (holding "penal act" exclusion does not apply since defendants could be liable for false imprisonment, as the claim is pleaded, without having committed the crime of custodial interference).

Second, there is no prior proceeding, much less a prior adjudication, that would be relevant here. Mr. Ford has not been indicted, charged, or convicted of any crime, nor has he pleaded guilty to any crime, with respect to the Davidsons in the Liability Lawsuit or relating to or arising out of the Davidsons' allegations against Mr. Ford in the Liability Lawsuit. (Schroeder Decl., ¶ 4, Ex. 3.)

The "penal acts" exclusion cannot defeat defense coverage.

### D.    Defendants' Counterclaim for Attorney Fees

The Rental Policy also covers Defendants' reasonable expenses, such as attorney fees, incurred in this Declaratory Judgment action. This coverage is found in the Rental Policy's Section II – Additional Coverages, which "cover[s] the following in addition to the limits of liability":

> c.    reasonable expenses incurred by any **insured** at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

(ECF 1-1, p. 18 (emphasis added).) By initiating this Declaratory Judgment action and serving Summonses on Defendants, State Farm requested that Defendants incur attorney fees to respond and participate in this declaratory action.

The Rental Policy does not define "request," which means it is afforded its common meaning. *See Rohde*, 170 Or. App. at 579-80 ("When a term is undefined by the policy itself, we identify the ordinary meaning of the term * * *."). Webster's Third New International Dictionary defines "request" in relevant part to include:

> 1 : the act of asking for something (as an object, a favor, or some action desired) : an expression of a desire or wish : ENTREATY, PETITION * * * 2 a : an instance of asking for something : an expressed desire * * * b : a document or other writing embodying such an expressed desire : PETITION

> * * * 5 : the state of being asked for or held in such estimation as to be sought after : DEMAND * * *

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1929 (unabridged ed. 2002). The common meaning of "request" is sufficiently broad to include State Farm's demand that Defendants participate in this declaratory action. At the very least, this is one reasonable interpretation from the perspective of the ordinary insured.

While Defendants could not locate an Oregon decision on this issue, numerous state supreme courts have interpreted similar provisions to cover the insureds' attorney fees incurred in responding to the insurer's declaratory action. In *Occidental Fire & Cas. Co. v. Cook*, 92 Idaho 7, 11, 435 P.2d 364 (1967), the Idaho Supreme Court interpreted the language "[t]he company shall reimburse the insured for all reasonable expenses, other than loss of earnings incurred at the company's request" to require reimbursement of the insured's attorney fees incurred in the insurer's declaratory judgment action.

In *Upland Mut. Ins., Inc. v. Noel*, 214 Kan. 145, 148, 519 P.2d 737 (1974), the Kansas Supreme Court reached the same conclusion based on the language "this Company shall pay, in addition to the applicable limits of liability: [* * *] (d) all reasonable expenses, other than loss of earnings, incurred by the insured at this Company's request." The Kansas Supreme Court concluded that "the filing of this suit constituted a 'request' by [the insurance company] and therefore the company is obligated under its policy to reimburse the insured [persons] for all reasonable expenses incurred at the company's request." *Id.* at 152; *accord Great W. Cas. Co. v. See*, 185 F.Supp.2d 1164 (D. Nev. 2002) (relying on *Upland Mut. Ins., Inc.* to reach the same conclusion under Nevada law).

In *Security Mut. Cas. Co. v. Luthi*, 303 Minn. 161, 165, 226 N.W.2d 878 (1975), the Minnesota Supreme Court considered language that the insurance company shall

Page 21 – DEFENDANTS' AND COUNTER CLAIMANTS' MSJ

"pay all expenses incurred by the Company for investigation, adjustment and defense, and reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the Company's request."   The court held that the insured "may recover its attorney fees incurred in defending the declaratory judgment action as 'expenses incurred at the Company's request.'"   *Id.* at 171.

In *State Farm Fire & Cas. Co. v. Sigman*, 508 N.W.2d 323, 325 (1998), the North Dakota Supreme Court interpreted language almost identical to the Rental Policy:

We cover the following in addition to the limits of liability:

1.   Claim Expenses.  We pay:

* * * * *

c.   reasonable expenses an insured incurs at our request.  This includes actual loss of earnings (but not loss of other income) up to $50 per day for aiding us in the investigation or defense of claims or suits.

The North Dakota Supreme Court found this language ambiguous:

We disagree with State Farm that this policy language is unambiguous.  The language can be reasonably interpreted to require the insured to pay its insured's litigation expenses only for claims and lawsuits brought by third parties against the insured.  However, it is not so expressed, and the language that State Farm will pay its insured's "reasonable expenses" incurred at the company's "request" is broad in scope and is without express conditions.  That broad language can also be reasonably interpreted to require State Farm to pay its insured's expenses in defending a lawsuit by State Farm to determine policy coverage.  Because there are several reasonable interpretations of this policy language, we conclude that the policy is ambiguous.

*Id.* at 325.  Based on this, the court construed the policy language to "require State Farm to pay for [the insured's] costs and attorney fees in defending against State Farm's declaratory judgment action."  *Id.* at 326; *accord Johnson v. Center Mut. Ins.*, 529 N.W.2d 568, 571 (N.D. 1995) ("Our decision in *Sigman* is dispositive * * *.").

While contrary decisions have been noted, such a split is further evidence of ambiguity. *See Sigman*, 508 N.W.2d at 326 (noting contrary decisions); *Bighorn Logging Corp.*, 295 Or. App. at 831 ("[T]he fact that other courts have not come to a consensus on the applicability of those exclusions in similar cases buttresses our own conclusion regarding that ambiguity."). An interpretation adopted by numerous state supreme courts is at least one reasonable interpretation, which is all Defendants must show to prevail under *Hoffman*. *Hoffman*, 313 Or. at 469-71 ("[W]hen two or more competing, plausible interpretations prove to be reasonable after all other methods for resolving the dispute over the meaning of particular words fail, then the rule of interpretation against the drafter of the language becomes applicable, because the ambiguity cannot be permitted to survive.") (emphasis in original).

State Farm did not have to bring this action to contest coverage. It could have denied defense coverage and left it to Defendants to decide whether Defendants wanted to engage in coverage litigation. Instead, State Farm determined that it was in State Farm's best interest to accept defense coverage and file this declaratory action, demanding the insureds' participation in this litigation. This participation comes at State Farm's request, and State Farm wrote its policy to cover the expense of such requests. Or at the very least, State Farm continues to use the same language that has been construed by numerous state supreme courts over several decades to cover the expense of such requests. If State Farm truly disagreed with this interpretation, it had ample time to clarify its policy language.

The Rental Policy's Section II – Additional Coverages section covers Defendants' attorney fees incurred in this declaratory action.

## V.    CONCLUSION

Defendants respectfully request that the Court grant summary judgment in Defendants' favor on State Farm's First Claim for Relief on the duty to defend and on Defendants' Counterclaim for their reasonable attorneys' fees incurred herein pursuant to the terms of the Rental Policy issued by State Farm to Defendants, in an amount to be determined after this case is fully resolved and declare that State Farm has a duty to continue to defend Defendants in the Liability Lawsuit.

DATED this 14th day of September, 2023.

MILLER INSURANCE LAW LLC


By  s/ Margaret E. Schroeder_____
    Margaret E. Schroeder, OSB No. 025748
    Email: margie@millerinsurancelaw.com
    *Attorneys for Defendants*
    *Cedar Avenue LLC and William Ford, Jr.*

## CERTIFICATE OF SERVICE

I certify that on the date noted below, I served the foregoing **DEFENDANTS' AND**

**COUNTER CLAIMANTS' MOTION FOR SUMMARY JUDGMENT** electronically via the

CM/ECF document filing system:

**David P. Rossmiller, OSB No. 983395**
Email:  drossmiller@chartwelllaw.com
**Elissa M. Boyd, OSB No. 111679**
Email:  eboyd@chartwelllaw.com
**Sean W. Carney, OSB No. 054550**
Email:  scarney@charwelllaw.com
The Chartwell Law Offices, LLP
1050 SW 6th Avenue, Suite 1100
Portland, OR 97204
Telephone: (503) 886-8108
Facsimile: (503) 961-7864
*Plaintiff State Farm Fire and Cas. Co.*

DATED this 14th date of September, 2023.

MILLER INSURANCE LAW LLC


By  s/ Margaret E. Schroeder
    Margaret E. Schroeder, OSB No. 025748
    Email: margie@millerinsurancelaw.com
    *Attorneys for Defendants*
    *Cedar Avenue LLC and William Ford, Jr.*