IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>　　　　　Plaintiff,<br>　v.<br><br>CEDAR AVENUE, LLC and WILLIAM FORD, JR.,<br><br>　　　　　Defendants. | Case No.: 3:23-cv-00634-JR<br><br>OPINION AND ORDER |

**Adrienne Nelson, District Judge**

　　　　　United States Magistrate Judge Jolie Russo issued Findings and Recommendation ("F&R") in this case on December 28, 2023. Judge Russo recommended that this Court grant in part and deny in part defendants'/counter claimants' Motion for Partial Summary Judgment, ECF [16], and deny plaintiff's Motion for Partial Summary Judgment, ECF [18]. All parties timely filed objections on January 11, 2024, and responses were timely filed on January 25, 2024.

　　　　　A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). If any party files objections to a magistrate judge's proposed findings and recommendations, "the court shall make a de novo determination of those portions of the report." *Id.* If no objections are filed, then no standard of review applies. However, further review by the district court *sua sponte* is not prohibited. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Advisory Committee notes to Federal Rule of Civil Procedure 72(b) recommend that unobjected to proposed findings and recommendations be reviewed for "clear error on the face of the record." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

1

# DISCUSSION

Plaintiff State Farm Fire & Casualty Company ("State Farm") brings this action seeking declaratory relief stating that it has neither a duty to defend nor a duty to indemnify defendants William Ford, Jr. ("Ford") and Cedar Avenue LLC ("Cedar Avenue") in an underlying federal court action. The underlying action was initiated by Eric and Haylee Davidson (collectively, the "Davidsons"), who rented a duplex unit from Ford and Cedar Avenue in Milwaukie, Oregon from December 5, 2021, until August 4, 2022. The Davidsons allege claims against Ford and Cedar Avenue for race discrimination and sex discrimination under both state and federal law, and state law claims for landlord retaliation, battery, intentional infliction of emotional distress, intentional interference with economic relations, and negligence. The relevant complaint allegations from the underlying action are included in the F&R.

State Farm issued a Rental Dwelling Policy ("Rental Policy") to Cedar Avenue, effective from September 25, 2021 through September 25, 2022. State Farm issued a Personal Liability Umbrella Policy ("Umbrella Policy") to Ford, effective from March 10, 2021 through March 10, 2023. In relevant part, the Rental Policy provides the following coverage:

> "COVERAGE L - BUSINESS LIABILITY (INCLUDING PROVISIONS POTENTIALLY RESTRICTING OR ABRIDGING THE RIGHTS OF THE INSURED) If a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury, or property damage to which this coverage applies, caused by an occurrence, and which arises from the ownership, maintenance, or use of the insured premises, we will:
>
> "1. pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> "2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability."

Compl., ECF [1], Ex. 1, at 15. The policy excludes the following from coverage:

> "a. bodily injury, personal injury, or property damage:
> "(1) which is either expected or intended by an insured; or
> "(2) to any person or property which is the result of willful and malicious acts of an insured."

*Id.* In relevant part, the policy provides the following definitions:

>"1. 'bodily injury' means bodily harm, sickness or disease.
>. . . .
>"8. 'occurrence' . . . means an accident, including exposure to conditions, which results in:
>>"a. bodily injury;
>>"b. property damage; or
>>"c. personal injury;
>
>"during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.
>
>"9. 'personal injury' means injury arising out of one or more of the following offenses:
>>"a. false arrest, detention or imprisonment or malicious prosecution;
>>"b. libel, slander or defamation of character; or c. invasion of privacy, wrongful eviction or wrongful entry."

*Id.*, Ex. 1, at 6-7.

State Farm moved for partial summary judgment on its duty to defend. Defendants cross-moved for summary judgment, also raising the duty to defend and seeking judgment on their counterclaim against State Farm for attorney fees incurred through the present action. The F&R found that State Farm had a duty to defend and that defendants were not entitled to attorney fees under the Rental Policy.

**A.    State Farm's Objections**

State Farm objects to the following in the F&R: (1) the reliance on what "discovery could show"; (2) the finding that the underlying complaint alleged an "occurrence"; (3) the finding that the duty to defend was not precluded by exceptions in the Rental Policy and the Umbrella Policy; (4) the finding that the duty to defend was not precluded by Oregon public policy; and (5) the finding that the duty to defendant was not precluded by the Umbrella Policy.

1.    *Reliance on What "Discovery Could Show" and "Occurrence" Finding*

The duty to defend arises if the complaint provides any basis for which the insurer provides coverage, even if some alleged conduct falls outside the scope of coverage. *Ledford v. Gutoski*, 319 Or. 397, 400, 877 P.2d 80, 83 (1994). Whether the duty to defend arises is determined only from the underlying complaint and the policy. *Id.*

State Farm's first objection arises from the F&R's statement that "it is unclear what discovery will reveal in the underlying action." F&R, ECF [29], at 10-11. State Farm argues that this

3

statement impermissibly broadened the scope of the inquiry beyond the complaint and policy. Although the Court agrees that referencing the discovery phase is improper, the F&R's ultimate conclusion was based on direct language from the complaint. Thus, the reference to the discovery phase does not undermine that conclusion.

State Farm also argues that the F&R erred in finding that the complaint alleges an "occurrence." State Farm argues that the complaint does not allege an "occurrence" because the only alleged intent is to cause the specific injury covered by the Rental Policy. However, the F&R found that the complaint could also suggest an "intent to increase the amount of work the Davidsons provide for Ford or to pay higher rent." *Id.* at 11. Before addressing whether the complaint alleges an occurrence, it is necessary to determine whether the complaint alleges an injury covered by the policy.

On its face, the complaint does not state a claim for an injury covered by the Rental Policy. However, even when a complaint does not explicitly state a covered injury, the duty to defend may still arise if the "*factual allegations* of the complaint, without amendment, state a claim for any offense covered by the policy." *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 91, 37 P.3d 148 (2001) (emphasis added) (holding that insurer had duty to defend if allegations in complaint, identified as a single claim for relief, "state more than one claim for relief, at least one of which is for conduct covered by the policy"). Defendants argue that the negligence claim and factual allegations of the complaint would support a claim for wrongful eviction, which is a covered injury under the Rental Policy. In the context of insurance policies, "wrongful eviction" means "an improper ouster from a possessory interest in property." *STK Enters., Inc. v. Crusader Ins. Co.*, 171 Or. App. 9, 15, 14 P.3d 638 (2000). A constructive eviction may result from "any act which has the effect of depriving a tenant of the free enjoyment of the premises, or any part thereof, or any appurtenances pertaining to these premises[.]" *Fitts v. Hanks*, 209 Or. 1, 5, 303 P.2d 220 (1956) (quoting *Hotel Marion Co. v. Waters*, 77 Or. 426, 433, 150 P. 865, 868 (1915)).

The factual allegations of the complaint could, without amendment, state a claim for wrongful eviction via constructive eviction. Specifically, the complaint contains numerous allegations

4

regarding Mr. Ford's conduct that interfered with the Davidsons' use and enjoyment of the property and alleges that "the Davidsons vacated the Rental Home to escape Mr. Ford." Compl., Ex. 3, ¶ 35. Thus, the question is whether the eviction was the result of an occurrence. The Rental Policy covers damages arising from a bodily injury, personal injury, or property injury caused by an "occurrence." *Id.*, Ex. 1, at 15. An occurrence is defined by the policy as "an accident," but the term "accident" is not defined by the policy. *Id.*, Ex. 1, at 7. Nevertheless, Oregon courts have deemed its meaning in this context unambiguous: whether alleged conduct constitutes an "accident" depends on "whether the insured specifically intended the harm suffered or, alternatively, engaged in an act so certain to cause the particular kind of harm that the court will say that the insured intended the harm." *Mut. of Enumclaw Ins. Co. v. Gutman*, 172 Or. App. 528, 534, 21 P.3d 101, 105 (2001).

State Farm argues that the F&R neglected to acknowledge Ford's stated intent, as evidenced in five separate statements where Ford expressed an intent to force the Davidsons to vacate the rental property:

- "[Ms. Davidson] was unable to get the type of pie requested because the store did not have that type of pie. When Ms. Davidson informed Mr. Ford about the pie he accused her of lying and *told her to get out of the Rental Home*." Compl., Ex. 3, ¶ 15 (emphasis added).

- "Mr. Davidson had a follow-up phone call with Mr. Ford regarding the pie incident. During that phone call, Mr. Ford called Mr. Davidson a dirty lying [N-word]. Mr. Ford also told Mr. Davidson that he is nothing but an immigrant; *it won't take much for Mr. Ford to remove him from the premises*; *all Mr. Ford had to do is make a phone call to Immigration and it will be over*; *and the Davidsons had to get off his property, or Mr. Ford would forcibly remove them*." *Id.*, Ex. 3, ¶ 17 (emphasis added).

- "Mr. Ford also said that he would evict Ms. Davidson right after she came to her senses and made his 'goddamn coffee.'" *Id.*, Ex. 3, ¶ 28.

- "During the conversation Mr. Ford told Mr. Davidson he is 'threatening you living there' and *'you are going to move away, I promise you that*.'" *Id.*, Ex. 3, ¶ 32 (emphasis added).

In State Farm's view, these allegations indicate a clearly expressed intent to force the Davidsons to vacate the property. Thus, the eviction was not "an accident," and is not covered by the policy.

5

Defendants argue that because these statements do not explicitly state an intent to evict the Davidsons, the only question is whether intent can be inferred. To an extent, the Court agrees. While these statements show that Ford told the Davidsons to leave the property and threatened to remove them from the property, they do not expressly allege that Ford's *intent* or ultimate goal was that the Davidsons vacate the property.

However, what these statements do demonstrate, along with other allegations from the complaint, is the inference that Ford intended to interfere with, and deprive the Davidsons of, their free enjoyment of the property. A constructive eviction occurs when (1) the lessee experiences substantial interference with their enjoyment of the premises and (2) elects to surrender possession of the premises due to the interference. *Maki v. Nikula*, 224 Or. 180, 184, 355 P.2d 770 (1960). Neither "physical ouster" nor "eviction by process of law," *i.e.*, actions by the landlord to physically remove the tenants from the property, are necessary to constitute a constructive eviction. *Perrigo v. Boehm*, 194 Or. 507, 518, 242 P.2d 791 (1952). Thus, to cause a constructive eviction, Ford need not have intended that the Davidsons vacate the property. Indeed, Ford need not have intended to deprive the Davidsons of the use and enjoyment of the property for a constructive eviction action to lie. *See Hotel Marion Co.*, 77 Or. at 432 ("[E]xcept in certain cases where the intent of the landlord is valuable in determining the nature of the acts performed, the intent is immaterial, since the vital fact to be determined is the interference with the tenant's beneficial enjoyment of the premises.").

Yet, even when it is "theoretically possible" to commit a civil wrong without intending to injure another person, "allegations concerning the manner in which those wrongs were committed . . . may require the inference that harm was intended." *Drake v. Mut. of Enumclaw Ins. Co.*, 167 Or. App. 475, 482, 1 P.3d 1065 (2000). In this case, the complaint plainly alleges that Ford acted with the intent to deprive the Davidsons of the use and enjoyment of the property, thereby intending to cause a particular injury. For example, the complaint states:

- "Mr. Ford interfered with Mr. Davidson's use or enjoyment of the Rental Home by intentionally discriminating against him on the basis of his race, color, or national origin and by creating or attempting to create an intimidating, hostile, or

6

offensive environment, when he subjected Mr. Davidson to racist insults, threatened his housing, and coerced him to rub liquid on Mr. Ford's naked body." Compl., Ex. 3, ¶ 41.

- "Mr. Ford discriminated against Ms. Davidson in the terms, conditions, or privileges of his rental of the Rental Home, or in the provision of services or facilities in connection therewith, because of her sex when he exposed his genitals to her, harassed and bullied her, threatened her housing, and coerced her to rub liquid on his naked body."[1] *Id.*, Ex. 3, ¶ 50.

- "Mr. Ford interfered with Ms. Davidson's use or enjoyment of the Rental Home by intentionally discriminating against her on the basis of sex and by creating or attempting to create an intimidating, hostile, or offensive environment, when he exposed his genitals to her, harassed and bullied her, threatened her housing, and coerced her to rub liquid on his naked body." *Id.*, Ex. 3, ¶ 55.

- "Mr. Ford intended to and in fact caused harmful or offensive physical contact with Ms. Davidson by way of coercion when he implicitly threatened to raise her rent, or otherwise threaten her housing, or engage in further harassment of her, if she did not rub moonshine onto his naked back and buttocks." *Id.*, Ex. 3, ¶ 63.

- "Mr. Ford intended to and in fact caused harmful or offensive physical contact with Mr. Davidson by way of coercion when Mr. Ford implicitly threatened to raise his rent or otherwise threaten his housing, or engage in further harassment of him, if he did not rub moonshine onto Mr. Ford's naked back and buttocks." *Id.*, Ex. 3, ¶ 66.

- "Mr. Ford intentionally inflicted severe emotional distress on Plaintiffs by way of extreme and outrageous conduct when he regularly exposed his genitals to them, coerced them into rubbing his naked back and buttocks, made threats regarding their housing, interfered with Ms. Davidson's employment, and made racist comments and otherwise harassed and bullied them among other acts." *Id.*, Ex. 3, ¶ 70.

- "Mr. Ford intentionally interfered with Ms. Davidson's contractual relationship with her employer when he created a hostile working environment for Ms. Davidson by harassing and bullying her, refusing to wear clothes, and coercing her into rubbing his naked body, thereby causing Ms. Davidson to lose her employment." *Id.*, Ex. 3, ¶ 78.

Defendants argue that these allegations are not dispositive because other allegations could support the reasonable inference that Ford had a secondary subjective intent, such as increasing the rent or procuring more labor from the Davidsons. This argument is unavailing. Like the parties in *Drake v. Mutual of Enumclaw Insurance Company*, the benefits from increased rent or procuring more labor that

---

[1] Although this allegation does not use the specific word "intentionally," disparate treatment discrimination necessarily implicates an intention to injure. *See Groshong v. Mut. of Enumclaw Ins. Co.*, 143 Or. App. 450, 458, 923 P.2d 1280 (1996).

7

Ford may have sought could only be gained at the Davidsons' expense. That is, to obtain these benefits, Ford allegedly committed intentional acts to deprive the Davidsons' of the use and enjoyment of the property. This too is evidenced by the allegations of the complaint:

- "Mr. Ford also sent a text message to Mr. Davidson stating picking up a pie 'is part of why y'all's rent is so low' and '[y]our rent will go up to $1,300.'" Compl., Ex. 3, ¶ 16.

- "Mr. Davidson had a follow-up call with Mr. Ford regarding the pie incident. During that phone call, Mr. Ford called Mr. Davidson a dirty lying [N-word]. Mr. Ford also told Mr. Davidson that he is nothing but an immigrant it won't take much for Mr. Ford to remove him from the premises; all Mr. Ford had to do is make a phone call to Immigration and it will be over; and the Davidsons had to get off his property or Mr. Ford would forcibly remove them." *Id.*, Ex. 3, ¶ 17.

- "After she made his coffee, Mr. Ford handed Ms. Davidson a spray bottle and asked her to follow him into the bathroom. He told her to open a package of microfiber wipes, spray the unknown substance on the wipes, and rub the substance onto his naked back and buttocks. She said she was uncomfortable with this, and Mr. Ford replied that she has cheap rent for a reason." *Id.*, Ex. 3, ¶ 20.

- "Mr. Davidson informed Mr. Ford by phone that he would be late on rent due to a loss of wages from Covid-19. In response, Mr. Ford stated that Mr. Davidson is nothing but a liar and never holds to his word; that white people never have these problems; that Mr. Ford only ever has problems with rent being late from [N-word] and [S-word used to disparage Spanish-speaking individuals]; that 'you people' are all the same; that Mr. Davidson should go back to his country if he can't afford the rent; and that he will evict Mr. Davidson if he can't afford to pay rent." *Id.*, Ex. 3, ¶ 22.

- "[W]hen Mr. Davidson visited Mr. Ford's home to pay rent, Mr. Ford walked around his home naked and asked Mr. Davidson to rub moonshine onto Mr. Ford's back and buttocks. Mr. Davidson refused to do so. In response, Mr. Ford stated that Mr. Davidson was made for that kind of work. When Mr. Davidson said he was leaving, Mr. Ford stated that he will add $50 to Mr. Davidson's rent next month." *Id.*, Ex. 3, ¶ 24.

- "Mr. Ford requested that Mr. Davidson bring him replacement filters for the rented air filtration device. Mr. Davidson told Mr. Ford that he would give him a call to set up a time to drop off the filters. In response, Mr. Ford became upset. He called Mr. Davidson a lying '[N-word] piece of shit' and told Mr. Davidson that he owed Mr. Ford clean air and needed to bring the filters immediately." *Id.*, Ex. 3, ¶ 26.

- "Ms. Davidson told Mr. Ford that she refused to work if he did not put on clothes. In response, Mr. Ford said that Ms. Davidson would be breaching a contract if she didn't work. Mr. Ford also stated that he would evict Ms.

8

> Davidson right after she came to her senses and made his 'goddamn coffee.'" *Id.*, Ex. 3, ¶ 28. "[I]mmediately following [this] conversation, Mr. Ford sent a text message to Mr. Davidson stating, 'Rent increase notice This is your 90 day notice for a rent increase.'" *Id.*, Ex. 3, ¶ 30.

- "Mr. Davidson then went to Ms. Heberts to confront Mr. Ford about [answering the door while naked in front of the Davidsons' child]. During the conversation Mr. Ford told Mr. Davidson he is 'threatening you living there' and 'you are going to move anyway, I promise you that.'" *Id.*, Ex. 3, ¶ 32.

Each of these allegations exemplifies instances in which Ford acted with an intent to deprive the Davidsons of the use and enjoyment of the premises for the purpose of obtaining benefits like increased labor or rent. For example, each time Ford allegedly raised the Davidsons' rent, the increase was preceded by the Davidsons' refusal or inability to provide a service. Each statement involving the alleged use of slurs, which deprived the Davidsons of the enjoyment of the property, was preceded by the Davidsons' refusal or inability to provide a service. As such, the only reasonable inference from the allegations of the complaint is that Ford intended to deprive the Davidsons of the use and enjoyment of the premises, regardless of whether he had a secondary intent to obtain benefits from the result of that harm.

Further, it is not reasonable to infer that Ford sought these benefits by depriving the Davidsons of the use and enjoyment of the property while simultaneously expecting that they would stay at the property. The nature and circumstances of the factual allegations make it unreasonable to infer or expect that the Davidsons would have remained on the premises. Thus, the allegations provide only one reasonable inference for Ford's intent: Ford acted with the intent of depriving the Davidsons of the use and enjoyment of the premises, and the nature and circumstances of that conduct made it certain that the Davidsons would vacate the premises. Because the complaint supports only the inference that Ford acted with the intent of wrongfully evicting the Davidsons, the complaint does not state an occurrence under the policy.

  2. *Willful and Malicious Acts Exclusion*

Even if the complaint did state an occurrence that resulted in an injury, State Farm argues that the F&R erred by finding that the willful and malicious acts exclusion did not preclude the duty to

defend. This exclusion precludes coverage for injuries "to any person or property which is the result of willful and malicious acts of an insured." *Id.*, Ex. 1, at 15. The F&R found that this exclusion did not apply because "a trier of fact could impose liability for negligent wrongful eviction through acts that were not intended to cause harm." F&R 13. The Court respectfully disagrees.

An act is done willfully and maliciously when it is "done both deliberately and with intent to harm another." *Est. of Schuch by and through Arle v. State Farm Fire & Casualty Co.*, 552 F. Supp. 3d 1154, 1165 (D. Or. 2021). Unlike the analysis for an occurrence, this exclusion does not require that the act was made with an "intent to [cause] particular harm," only that the act was made "intentionally to harm." *Id.* State Farm argues that there are no facts alleged that caused the Davidsons to vacate the premises that do not also allege an intent to cause some harm to the Davidsons. For example, State Farm points to the allegations that the Davidsons vacated the property to "escape" Ford, that the conduct described caused them "substantial emotional distress and mental suffering," and included "Ford's racist insults to Mr. Davidson, his coercive behavior, his threats regarding [the Davidsons'] housing . . . his interference with [Ms. Davidson's] job, [and] his intimidation of [Ms. Davidson]." Compl., Ex. 3, ¶¶ 35, 37-38,

Defendants argue that because the Davidsons could prevail on their negligence claim without proving that Ford intended to cause any harm, the exclusion does not apply. This argument misstates the inquiry. The question is whether the Davidsons could prevail on a *wrongful eviction* claim without proving that Ford intended to cause any harm. In that context, the harm suffered was the Davidsons' deprivation of the use and enjoyment of the property and their subsequent abandonment of the property.

No reasonable reading of the complaint could support a finding that Ford acted without an intent to harm. As already stated, the only reasonable inference that may be drawn from the complaint is that Ford intended to deprive the Davidsons of the use and enjoyment of the property. Again, even if Ford had a secondary motive for his alleged conduct, the complaint provides no reasonable basis for finding that he acted to obtain these benefits without also acting with an intent to harm. The allegations

surrounding Ford's conduct relate to discriminatory and retaliatory acts—acts from which an intent to harm must necessarily be inferred. *See Groshong v. Mut. of Enumclaw Ins. Co.*, 143 Or. App. 450, 458, 923 P.2d 1280 (1996) (holding that housing discrimination claim alleging intentional disparate treatment was precluded from insurance coverage as a matter of public policy). Indeed, the complaint explicitly states that it was Ford's allegedly discriminatory acts that interfered with the Davidsons' use and enjoyment of the property. The only basis upon which a reasonable fact finder could determine that the Davidsons were constructively evicted is Ford's alleged conduct that demonstrated a clear intent to harm; thus, the willful and malicious acts exclusion applies and precludes the duty to defend.

Because the complaint does not state an occurrence and, even if it did, the willful and malicious acts exclusion would apply, State Farm does not owe a duty to defend under the Rental Policy.

3. *Umbrella Policy*

Because the F&R determined that State Farm had a duty to defend under the Rental Policy, it declined to assess whether the duty to defend would arise under the Umbrella Policy. Having found that State Farm does not have a duty to defend under the Rental Policy, the Court turns to the Umbrella Policy.

State Farm argues that the Umbrella Policy does not trigger the duty to defend because Ford's conduct falls under Exclusions 3, 6, and 17. The Umbrella Policy provides coverage "for damages because of a loss to which this policy applies . . . when the basis for the suit is a loss that is not covered by any other insurance policy but is covered by this policy." Compl., Ex. 2, at 12. A loss is defined in the policy as:

> "a. an accident, including accidental exposure to conditions, which first results in bodily injury or property damage during the policy period. . . . ; or
>
> "b. the commission of an offense which first results in personal injury during the policy period. A series of similar or related offenses is considered to be one loss."

*Id.*, Ex. 2, at 8. A personal injury is defined as:

> "a. false arrest, false imprisonment, wrongful eviction, wrongful detention of a person; b. abuse of process, malicious prosecution; c. libel, slander, defamation of character; or d.

11

>   invasion of a person's right of private occupancy by physically entering into that person's personal residence."

*Id.* Exclusion 3 excludes coverage for any "loss arising out of alleged or actual: a. sexual harassment; b. sexual molestation; or c. discrimination prohibited by law; by the insured[.]" *Id.*, Ex. 2, at 13. Exclusion 6, in relevant part, excludes coverage for any "loss arising out of any insured's business property or business pursuits of any insured" with certain exceptions. *Id.* Exclusion 17 excludes coverage for "personal injury when the insured acts with specific intent to cause any harm[.]" *Id.*, Ex. 2, at 15.

For the same reasons already stated in the prior section, Exclusion 17 precludes coverage because the complaint supports only the inference that Ford acted with the intent to cause harm. Therefore, State Farm does not have a duty to defend under the Umbrella Policy.

**B.    Defendants' Objections**

Finally, defendants object to the F&R's recommendation that their motion for summary judgment on the issue of attorney fees be denied. The Rental Policy provides that State Farm will cover "reasonable expenses incurred by any insured at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit[.]" *Id.*, Ex. 1, at 18. The F&R found that no reasonable interpretation of this policy provision would suggest that, in defending this action, defendants incurred reasonable attorney fees at State Farm's request. Because defendants' expenses derived from an effort to defend a position at odds with State Farm, the F&R concluded that the expenses were not incurred to assist State Farm or at State Farm's request.

Defendants argue that the F&R erred by focusing on the fact that defending this action was not an action taken to assist State Farm. However, the policy clearly states that only those expenses that are incurred "at [State Farm's] request" are covered. *Id.* Defendants have provided no argument as to how or why State Farm would request that defendants incur attorney fees by defending against this action. Defendants' reliance on an out-of-state decision as evidence of ambiguity is unavailing—out of state cases have no impact on contract analysis conducted under Oregon law where the "plain meaning of the

contract language speaks for itself." *W. Am. Ins. Co. v. Hernandez*, 669 F. Supp. 2d 1211, 1222 (D. Or. 2009).

## CONCLUSION

Accordingly, the Court declines to adopt the F&R, ECF [29]. State Farm's Motion for Partial Summary Judgment, ECF [18], is GRANTED. Defendants' Motion for Partial Summary Judgment, ECF [16], is DENIED.

IT IS SO ORDERED.

DATED this 16th day of May, 2024.

_____
Adrienne Nelson
United States District Judge